Scott R. Pettitt, NV Bar # 11682
Andrew W. Hazlett, NV Bar # 17079
**MGM RESORTS INTERNATIONAL**
6770 South Edmond Street
Las Vegas, NV 89118
Telephone: (702) 692- 1937
Fax No.: (702) 669-4501
Emails: spettitt@mgmresorts.com
          ahazlett@mgmresorts.com

*Attorneys for Defendants Aria Resort & Casino, LLC; Aria Resort & Casino Holdings, LLC; and MGM Resorts International*

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| FRANZ WAKEFIELD,<br><br>Plaintiff,<br><br>v.<br><br>ARIA RESORT & CASINO, LLC, a Nevada Limited Liability Company; ARIA RESORT & CASINO HOLDINGS, LLC, a Nevada Limited Liability Company; MGM RESORTS INTERNATIONAL, a Delaware Corporation; DOES 1 through 20, inclusive; and ROE LEGAL ENTITIES I through XX, inclusive,<br><br>Defendants. | Case No.: 2:25-cv-01761-GMN-MDC<br><br>**DEFENDANTS ARIA RESORT & CASINO, LLC; ARIA RESORT & CASINO HOLDINGS, LLC; AND MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFF FRANZ WAKEFIELD'S COMPLAINT** |

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Aria Resort & Casino, LLC; Aria Resort & Casino Holdings, LLC; and MGM Resorts International (together, "Defendants"), by and through undersigned counsel of record, hereby move this Court pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(h)(3), and 12(b)(6) to dismiss Plaintiff Franz Wakefield's Complaint (ECF No. 1) in its entirety with prejudice.

### I.     BACKGROUND

Plaintiff's threadbare allegations are that between September 23, 2023 and October 1, 2023, he remembers winning more than $2 million gambling at Aria's roulette tables and slot machines, but that Aria never mailed him the check. (*See* Compl. ¶¶ 12–14, 16, 18.) Specifically, Plaintiff claims that when he "sought to cash out his winnings, Aria casino employees told him that he would have to give his information to the casino cashier," so he "surrendered his chips to the Aria in exchange for the promise to pay him with a check sent directly to his home address," but he "never received any check from Aria for his winnings." (*Id.* ¶¶ 15–18.) Plaintiff concedes without any facts or specificity that he "followed up with Aria," but "Aria's management denied having any record of Plaintiff's wins." (*Id.* ¶ 19.) Nowhere does Plaintiff allege that he ever filed a complaint with the Nevada Gaming Control Board which has exclusive jurisdiction over this dispute.

Instead, Plaintiff waited for two years for his $2 million check to arrive before filing his Complaint on September 17, 2025 alleging claims for Negligent Training, Hiring, and Supervision; Breach of Contract; Conversion; Unjust Enrichment; and Negligent or Fraudulent Misrepresentation. MGM Resorts was served with the Complaint on September 23, 2025. Thereafter, MGM Resorts filed a First Stipulation to Extend Time on October 10, 2025 (ECF No. 6) and a Second Stipulation to Extend Time on October 28, 2025 (ECF No. 10).

Plaintiff's Complaint must be dismissed in its entirety. Pursuant to NRS 463.362 to 463.366, inclusive, the Nevada Gaming Control Board (the "NVGCB") would have exclusive jurisdiction over this dispute. Plaintiff, however, did not file a complaint with the NVGCB—and as such—is not seeking judicial review of an NVGCB decision as authorized by NRS 463.3662. Accordingly, this Court does not have subject matter jurisdiction, and Plaintiff's Complaint must

be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3). In addition, even if the Court *could* exercise jurisdiction (which it cannot), Plaintiff's claims also warrant dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction, possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The party asserting federal jurisdiction has the burden of establishing all its requirements, and the Court presumes that it lacks subject matter jurisdiction until it is established by the plaintiff. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Therefore, before the Court considers the merits of the case, it must first determine whether it has proper subject matter jurisdiction. *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 653–54 (9th Cir. 2002).

Motions to dismiss for lack of subject matter jurisdiction are permitted by Rule 12(b)(1) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(1). When subject matter jurisdiction is challenged, the burden of proof is placed on the party asserting that jurisdiction exists. *See Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (holding that "[t]he party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists"). Courts will presume lack of subject matter jurisdiction until the plaintiff proves otherwise in response to the motion to dismiss. *Kokkonen*, 511 U.S. at 377. A motion to dismiss under Rule 12(b)(1) may be construed as 'facial,' by attacking the sufficiency of the allegations in support of subject matter jurisdiction, or it may be construed as 'factual,' by "attacking the existence of subject matter jurisdiction in fact." *See Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *see also Ferrari Fin. Servs., Inc. v. Murapa*, 2025 U.S. Dist. LEXIS 49737, *4. A dismissal with prejudice is proper where a Plaintiff has no way to cure the jurisdictional defect. *See Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988).

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual

allegations as true, legal conclusions couched as factual allegations are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

**III.     ARGUMENT**

    **A.     The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims**

Pursuant to NRS 463.361, "[e]xcept as otherwise provided in NRS 463.361 to 463.366, inclusive, and 463.780, gaming debts that are not evidenced by a credit instrument are void and unenforceable and do not give rise to any administrative or civil cause of action." NRS 463.361.[1] Instead, where a claim is made for $500 or more, "[a] claim by a patron of a licensee for payment of a gaming debt that is not evidenced by a credit instrument may be resolved in accordance with NRS 463.362 to 463.366, inclusive." NRS 463.361(1)–(2)(a).[2] Specifically, NRS 463.362 explains that "[w]henever a patron and a licensee…have any dispute which cannot be resolved to the satisfaction of the patron and which involves: Alleged winnings…the Board, through an agent, shall conduct whatever investigation it deems necessary and shall determine whether payment should be made." NRS 463.362(1)(a), (3).

After the agent makes a determination, the statute provides administrative remedies that are to be followed, including the availability of judicial review. *See* NRS 463.362–463.3668. "Any person aggrieved by a final decision or order of the Board or the hearing examiner made after hearing by the Board pursuant to NRS 463.361 to 463.366, inclusive, may obtain a judicial review thereof in the district court . . . ." NRS 463.3662(1). Any such judicial review, however,

---

[1] The statute defines a "credit instrument" as "a record which evidences a gaming debt owed to a person who holds a nonrestricted license at the time the debt is created, and includes any record taken in consolidation, redemption or payment of a previous credit instrument." NRS 463.01467.
[2] Nevada law categorizes suits to collect unpaid gambling winnings as gaming debts. *See, e.g., Erickson v. Desert Palace, Inc.*, 942 F.2d 694, 695 (9th Cir. 1991) ("Under Nevada law, an unpaid slot machine jackpot is a gaming debt not evidenced by a credit instrument.")

4
MOTION TO DISMISS PLAINTIFF'S COMPLAINT

"must be instituted by filing a petition within 20 days after the effective date of the final decision or order." NRS 463.3662(2). "[J]udicial review by the district court and the appellate court of competent jurisdiction . . . is the exclusive method of review of any actions, decisions and orders in hearings held pursuant to NRS 463.361 to 463.366, inclusive. Judicial review is not available for extraordinary common-law writs or equitable proceedings." NRS 463.3668(2).

Accordingly, whenever a patron has a dispute relating to gambling, the dispute must be brought to and addressed by the NVGCB. Only *after* petitioning the NVGCB to reconsider the written decision issued by the agent(s) handling the dispute may a patron seek judicial review of the NVGCB's final decision. *See* NRS 463.363–463.3662. Otherwise, "exclusive jurisdiction over the dispute" rests with the NVGCB. NRS 463.362(3); *see Erickson v. Desert Palace, Inc.*, 942 F.2d 694, 696 (9th Cir. 1991) ("NRS 463.361 to 463.3688 limits a plaintiff's recovery of a gaming debt to the exclusive administrative/judicial review procedure contained therein.").

The Ninth Circuit has affirmed that the administrative review process set forth in NRS 463.361, including the resolution procedures set forth in NRS 463.362, *et seq.*, is "interpreted as conferring exclusive jurisdiction upon the Gaming Control Board 'to resolve a disputed claim . . . by a patron of a gaming licensee for payment of a gambling debt that is not evidenced by a credit instrument . . . .'" *Zoggolis v. Wynn Las Vegas, LLC*, 768 F.3d 919, 921 (9th Cir. 2014) (quoting *Sengel v. IGT*, 116 Nev. 565, 568 (2000)).[3] Thus, "under Nevada's statutory scheme, a proceeding before the Gaming Control Board is the only remedy available to enforce a gaming debt not evidenced by a credit instrument." *Zoggolis*, 768 F.3d at 921 (internal quote omitted).

"The Nevada Gaming Control Board has exclusive jurisdiction to resolve a disputed claim . . . by a patron of a gaming licensee for payment of a gambling debt that is not evidenced by a credit instrument." *Sengel*, 116 Nev. at 568. "*No other remedy exists* to enforce a gaming debt not evidenced by a credit instrument." *Id.* at 568–69 (italics added).

---

[3] The NVGCB's exclusive jurisdiction over such disputes has long been recognized in Nevada's state and federal courts. *See, e.g.*, *Harrah's Club*, 104 Nev. 762; *Devon v. Unbelievable Inc.*, 820 F. Supp. 528, 529 (D. Nev. 1993) (stating that when a plaintiff does not pursue resolution of his dispute under the NVGCB regulations, "this Court is without subject matter jurisdiction because Plaintiff failed to exhaust . . . administrative remedies."); *Zoggolis*, 768 F.3d at 921.

Here, Plaintiff's claims are centered solely upon alleged gambling winnings he claims he is owed in connection with "gambl[ing] several times at the Aria's casino, including roulette tables and slot machines." (Compl. ¶ 13.) Plaintiff does not (and cannot) claim that this alleged gaming debt is evidenced by a credit instrument. As a result, Plaintiff's claims fall squarely within the NVGCB's exclusive jurisdiction.

Nevertheless, Plaintiff never submitted a formal complaint to the NVGCB concerning this dispute. And Plaintiff does not bring this action as a petition for judicial review of NVGCB's final decision because no such final decision was ever sought or issued. Accordingly, the Court does not have jurisdiction over this matter pursuant to NRS 463.361–463.366.

Plaintiff's Complaint must be dismissed as a matter of law pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or 12(h)(3).[4]

### B. Plaintiff's Vague "Fraud" References Do Not Deprive the NVGCB of Exclusive Jurisdiction and Fail to State a Claim in Any Event

As is discussed further below, Plaintiff's fifth cause of action for "Negligent or Fraudulent Misrepresentation" merely offers a formulaic recitation of certain elements and conclusions without pleading any facts to plausibly show that Defendants committed a fraud. Plaintiff's allegations fall short of the standard pleading requirements under Rule 12(b)(6) and certainly fail to meet the heightened particularity requirements of Rule 9(b). Fed. R. Civ. P. 9(b).

Nevertheless, amendment would be futile because even sufficiently pleaded allegations of fraud cannot deprive the NVGCB of exclusive jurisdiction over Plaintiff's claim for alleged winnings. Although patrons may be permitted to "assert an action outside the administrative process to recover *gambling losses* sustained due to casino fraud," patrons cannot "avoid the administrative process simply by alleging fraud in a patent attempt to force a casino to turn over alleged winnings" owed by the casino. *Erickson*, 942 F.2d at 697 (italics original); *see also Devon*

---

[4] Considering that (1) the NVGCB has exclusive jurisdiction over this dispute, and (2) the debt sought by Plaintiff is not evidenced by a credit instrument, Plaintiff also fails to state any viable claims. *See* NRS 463.361 (stating that gaming debts that are not evidenced by a credit instrument are void and unenforceable and do not give rise to any administrative or civil cause of action). Future amendment to Plaintiff's claims would be futile.

*v. Unbelievable, Inc.*, 820 F. Supp. 528, 529 (D. Nev. 1993); *Mattes v. Ballys Las Vegas*, 227 F. App'x 567, 572 (9th Cir. 2007).

All of Plaintiff's claims fall squarely within the exclusive jurisdiction of the NVGCB, and these conclusory allegations do nothing to change that. Plaintiff never submitted a formal complaint to the NVGCB concerning this dispute, and the Court does not have jurisdiction over this matter pursuant to NRS 463.361-463.366. Accordingly, Plaintiff's Complaint should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3).

### C. Plaintiff's Claims Otherwise Fail and Warrant Dismissal

As an initial matter, Plaintiff's Complaint names MGM Resorts International as a Defendant; however, MGM Resorts International does not possess a gaming license, does not operate the Aria Resort & Casino, and the Complaint contains no allegations related to MGM Resorts International. Even if Plaintiff alleged viable claims in this matter (he has not and cannot), there is simply no basis for MGM Resorts International's liability. Under any scenario, MGM Resorts International must be dismissed as an improper party to this action.

#### 1. Plaintiff's First Cause of Action for Negligent Training, Hiring, and Supervision Fails to State a Claim

"To establish a claim for negligent training or supervision, a plaintiff must show: (1) that the defendant owed a duty of care to her, (2) the defendant breached that duty by not using reasonable care in training and supervising its employees to ensure that they are fit for their positions, (3) causation, and (4) damages." *Roaque v. Walmart, Inc.*, No. 2:22-CV-1979 JCM (BNW), 2024 U.S. Dist. LEXIS 99609, at *7-8 (D. Nev. June 5, 2024) (citing *Freeman Expositions, LLC v. Eighth Judicial Dist. Court*, 520 P.3d 803, 811 (Nev. 2022)); *Hall v. SSF, Inc.*, 112 Nev. 1384, 1391–94 (Nev. 1996).

Here, however, Plaintiff's complaint merely alleges the above elements and concludes that they were met without pleading any facts in support. Reading Plaintiff's Complaint in the most favorable light possible, insofar as Plaintiff alleges any wrongful conduct, the wrong perpetrated relates to the conduct of *Defendants themselves*—not their employees. Plaintiff alleges that he was "gambling at the Aria" and "was able to win a significant amount" "at the

Aria's casino, including [its] roulette tables and slot machines." (Compl. ¶¶ 13-14.) Plaintiff's Complaint cannot support a claim for negligent training, hiring, and supervision because it alleges Aria's failure to pay winnings—not a failure to train employees, to conduct background checks, to supervise employees' work, to terminate someone dangerous, and so on. *See Freeman*, 520 P.3d at 812 (holding plaintiff failed to state a claim for negligent hiring, training, or supervision because the wrong allegedly perpetrated "relates to the conduct of the employer, and not another employee."). In any event, Plaintiff's Complaint contains no alleged facts in support of negligent training, hiring, or supervision beyond the conclusory allegation that Aria's failure to mail Plaintiff a check establishes Defendants' negligence per se.

        **2.    Plaintiff's Second Cause of Action for Breach of Contract Fails to State a Claim and is Preempted by NRS 463.361 as Void and Unenforceable in Any Event**

"To state a claim for breach of contract under Nevada law, a plaintiff must demonstrate (1) the existence of a valid contract, (2) that plaintiff performed or was excused from performance, (3) that the defendant breached, and (4) that the plaintiff sustained damages." *Roberts v. Citibank, N.A.*, No. 2:24-cv-01375-GMN-MDC, 2024 U.S. Dist. LEXIS 208742, at *12 (D. Nev. Nov. 18, 2024) (citations omitted).

Here, the Nevada legislature has deemed the precise contract alleged to have been breached as void and unenforceable pursuant to NRS 463.361. Specifically, NRS 463.361(1) states "gaming debts that are not evidenced by a credit instrument are void and unenforceable and do not give rise to any administrative or civil cause of action." Plaintiff fails to identify any specific *enforceable* contract, that Plaintiff performed on that contract, or that Defendants breached that contract. Plaintiff merely alleges that he handed over what he "believed to be over $2 million" in "chips" and that Defendants' acceptance of what he believed to be over $2 million in chips somehow subjected Defendants to a "binding contract" "to remit payment by check" of the amount Plaintiff believed he won. (Compl. ¶¶ 30–31.) Plaintiff's nonsensical allegations fail to state a claim.

### 3. Plaintiff's Third Cause of Action for Conversion Fails to State a Claim

Plaintiff's conversion claim suffers from the same defects as his breach of contract cause of action. "Under Nevada law, conversion is defined 'as a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights. . . .'" *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.*, 460 F. Supp. 2d 1222, 1244 (D. Nev. 2006) (citing *Ferreira v. P.C.H., Inc.*, 105 Nev. 305, 308 (Nev. 1989)).

Here, Plaintiff merely alleges that he "had a right to possession of the funds represented by the surrendered chips" and that "Defendants wrongfully exercised dominion and control over Plaintiff's property by accepting the chips and refusing to return them or pay their value." (Compl. ¶¶ 35–36.) First, Plaintiff never alleges that he sought the return of any chips and was refused; he only alleges that Defendants promised to mail him a check but never did. Second, to the extent Plaintiff seeks to pursue a claim that Defendants engaged in an act of conversion by failing to pay alleged gambling winnings, that claim is statutorily barred by NRS 463.361 for the same reason that Plaintiff's other claims are statutorily barred. Plaintiff could not have had a "right to possession of the funds represented by the surrendered chips" (Compl. ¶ 35) because NRS 463.361 states "gaming debts that are not evidenced by a credit instrument are void and unenforceable," and claims must be "resolved in accordance with NRS 463.362 to 463.366."

### 4. Plaintiff's Fourth Cause of Action for Unjust Enrichment Fails to State a Claim

Plaintiff's unjust enrichment claim bears the same fatal flaws as his other causes of action. To state a claim for unjust enrichment, a plaintiff must allege "1) a benefit conferred on the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." *Jamil v. Caesars Entm't Corp.*, No. 2:14-CV-1363 JCM (GWF), 2015 U.S. Dist. LEXIS 57727, at *13 (D. Nev. Apr. 30, 2015) (citing *Unionamerica Mortg. & Equity Trust v. McDonald*, 97 Nev. 210, 212 (1981)).

Here, Plaintiff's unjust enrichment claim merely recites the same conclusory allegations as with the breach of contract and conversion claims.  Nevertheless, "[u]njust enrichment applies to situations where there is no legal contract but where the defendant is in possession of money or property which it, in good conscience and justice, should not retain." *Id.*  Plaintiff's allegations are not only conclusory but also fail to explain the manner by which Defendants have been unjustly enriched.  Plaintiff does not allege that his wagers or gambling losses unjustly enriched Defendants; instead, he alleges that he "gambled several times" and "was able to win a significant amount, which he believes to be over $2 million." (Compl. ¶¶ 13–14.)  Said differently, Plaintiff does not allege that Defendants were unjustly enriched by his wagers; he alleges that he is entitled to $2 million from Defendants because he won it—without pleading any articulable facts in support of those assertions.  And again, this claim is likewise statutorily barred by NRS 463.361.

### 5. Plaintiff's Fifth Cause of Action for Negligent or Fraudulent Misrepresentation Fails to State a Claim

To state a claim for fraud in Nevada, the plaintiff must demonstrate (1) a "false representation made by the defendant," (2) the defendant's knowledge or belief that the representation is false," (3) the defendant's "intention to induce the plaintiff to act or refrain from acting in reliance upon the misrepresentation," (4) the plaintiff's "justifiable reliance upon the misrepresentation," and (5) "[d]amage to the plaintiff resulting from such reliance." *Bulbman, Inc. v. Nevada Bell*, 108 Nev. 105, 111 (Nev. 1992).

As is set forth above, however, Plaintiff's formulaic references to certain elements and conclusions fail to meet even the basic pleading requirements let alone the heightened pleading requirements for fraud.  To the extent Plaintiff's Complaint is premised upon a conspiracy across Defendants and departments intended to deprive him of his winnings, Plaintiff has failed to plead any facts whatsoever to clue Defendants in on circumstances of the fraud alleged. *See Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong.") (cleaned up).

Moreover, Rule 9's particularity standard requires a plaintiff to "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1055 (9th Cir. 2011)). "[A] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106.

Here, Plaintiff's allegations of fraud are comprised only of a recitation of the elements along with Plaintiff's conclusions that those elements have been met. The sole facts alleged by Plaintiff are that Defendants "falsely represented to Plaintiff that they would pay his winnings by check, sent by certified mail to his home address." (Compl. ¶ 46.) Beyond that, Plaintiff merely concludes—but does not allege—that Defendants "knew or should have known that the representations were false"; "intended for Plaintiff to believe their false representations, and to act, or refrain from acting, in reliance upon their misrepresentation"; "Plaintiff was justified in relying upon the statements and did not know they were false"; caused damage; and acted with "willful, wanton, malicious, and oppressive" intent. (Compl. ¶¶ 46–51.)

These deficient allegations are emblematic of the insufficient fraud allegations that Rule 9 is intended to prevent. Plaintiff's fraud claims fall short of the standard pleading requirements and certainly do not meet the required heightened particularity standard.

## IV.  CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court dismiss the Complaint in its entirety.

DATED: November 7, 2025                               **MGM RESORTS INTERNATIONAL**

                                                       /s/ *Andrew W. Hazlett*
                                                       Scott R. Pettitt, NV Bar # 11682
                                                       Andrew W. Hazlett, NV Bar # 17079
                                                       *Attorneys for Defendants Aria Resort & Casino, LLC; Aria Resort & Casino Holdings, LLC; and MGM Resorts International*

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2025, the foregoing **DEFENDANTS ARIA RESORT & CASINO, LLC; ARIA RESORT & CASINO HOLDINGS, LLC; AND MGM RESORTS INTERNATIONAL'S MOTION TO DISMISS PLAINTIFF FRANZ WAKEFIELD'S COMPLAINT** was filed using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

**MGM RESORTS INTERNATIONAL**

/s/ *Emma Forte*
Employee of MGM Resorts International
6770 South Edmond Street, Third Floor
Las Vegas, NV 89118
Telephone: (702) 692-1937
Fax No.: (702) 669-4501