Jason F. Lather
Nevada Bar No. 12607
LATHER LAW
4484 S. Pecos Rd., Suite 171
Las Vegas, NV 89121
Ph:   (702) 979-3500
Fax:  (702) 935-0071
jason@latherlaw.com
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| FRANZ WAKEFIELD, an individual. | Case No.: 2:25-cv-01761-GMN-MDC |
| Plaintiff, | |
| v. | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| ARIA RESORT & CASINO, LLC, a Nevada limited liability company; ARIA RESORT & CASINO HOLDINGS, LLC, a Nevada limited liability company; MGM RESORTS INTERNATIONAL, a foreign corporation; DOES 1 through 20 and ROE legal entities I through XX, inclusive, | |
| Defendants. | |

Plaintiff FRANZ WAKEFIELD, by and through his attorney of record, Jason F. Lather of Lather Law, hereby submits this Opposition to Defendants' Motion to Dismiss (ECF No. 13). This Opposition is based on the attached Memorandum

///

///

///

1

of Points and Authorities, all pleadings and papers on file herein, and any oral argument this Court may entertain at the time of hearing.

DATED this 21st day of November, 2025.

**Lather Law**

*/s/ Jason Lather*

Jason F. Lather, Esq.
Nevada Bar No. 12607
4484 S. Pecos Rd., Suite 171
Las Vegas, NV 89121

## POINTS AND AUTHORITIES

### I.     INTRODUCTION AND SUMMARY OF ARGUMENT

First and foremost, this case does not concern a wager. It concerns what happened after Plaintiff lawfully won over $2 million at the Aria Resort & Casino. Plaintiff alleges that he was instructed to surrender his casino chips with the promise that payment would follow. He did so, provided three forms of identification, and then… received nothing. When he followed up, Defendants denied any record of the transaction.

Plaintiff does not seek to enforce a gaming debt, but to redress distinct post-gaming misconduct. His claims for negligent training, hiring, and supervision; breach of contract; conversion; unjust enrichment; and negligent or fraudulent misrepresentation are all properly pleaded under Nevada law and fall within this court's jurisdiction. The Nevada Gaming Control Board ("NGCB") does not have "exclusive jurisdiction" over this matter, despite Defendants' protestations.

## II. FACTUAL ALLEGATIONS

Plaintiff Franz Wakefield visited the Aria Resort & Casino from approximately September 23 through October 1, 2023. (Complaint, ECF No. 1, at ¶ 12.) During this time, he gambled lawfully and accumulated winnings he believes exceeded $2 million. (Complaint, at ¶¶ 13-14.)

When he attempted to redeem his chips, casino staff instructed him to surrender them to the cashier and assured him that a check would be mailed to his Florida address. (Complaint, at ¶ 15.) Plaintiff complied, providing his Florida driver's license, a U.S. passport card, and a concealed carry permit as identification. (Complaint, at ¶ 17.) He relinquished the chips in reliance on this promise. (Complaint, at ¶ 16.)

Implicitly, Plaintiff's Complaint contends that records were generated by the casino's employees as evidence of the winning. However, Plaintiff did not receive the records and did not realize that he was entitled to them. To the extent that these allegations need clarification, Plaintiff requests leave to amend his Complaint to add those details.

No payment arrived. (Complaint, at ¶ 18.) When Plaintiff contacted Aria staff to inquire, he was told there was no record of the winnings or of the transaction; the casino retained his winnings and refused to issue payment. (Complaint, at ¶ 19.)

## III. LEGAL STANDARD

Rule 12(b)(1) requires dismissal where the Court lacks subject matter jurisdiction. The burden rests with the party invoking federal jurisdiction. Safe

1  Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). All well-pleaded
2  factual allegations must be taken as true.
3      To survive a Rule 12(b)(6) motion, a complaint must contain sufficient
4  factual matter to "state a claim to relief that is plausible on its face." Ashcroft v.
5  Iqbal, 556 U.S. 662, 678 (2009).
6  **IV.  PLAINTIFF'S CLAIMS ARE NOT BARRED BY NRS CHAPTER 463**
7      **A.  Plaintiff's Claims Arise from Post-Gaming Misconduct**
8      Defendants argue that the NGCB has "exclusive jurisdiction" over all
9  disputes between patrons of a Nevada casino and the casino operator regarding
10 unpaid winnings. However, Plaintiff contends that the exclusive jurisdiction of
11 the NGCB ends after the winnings are confirmed. There is no doubt that courts
12 have affirmed that the NGCB has exclusive jurisdiction over disputes regarding
13 *whether a patron is entitled to his/her winnings in the first place* (*see, e.g.*,
14 Erickson v. Desert Palace, Inc., 942 F.2d 694 (9th Cir. 1991)), but Plaintiff is
15 unaware of any case in which it was determined that the courts did not have
16 jurisdiction over this type of dispute – in which the patron alleges that he
17 already won, collected his chips, turned them over to the casino in exchange for
18 a promise of payment by mail, and never received that payment.
19     These events occurred after gaming ended and form the basis of Plaintiff's
20 tort and contract claims. In other words, this dispute does not involve a "gaming
21 debt" as defined by the statute, and therefore, the NGCB does not have exclusive
22 jurisdiction over the dispute.

**B.   Plaintiff's "Gaming Debts" Are "Evidenced by a Credit Instrument"**

If the court finds that Plaintiff's dispute does indeed involve "gaming debts," that is not the end of the analysis. The statute expressly applies to "gaming debts that are not evidenced by a credit instrument." NRS 463.361(1). Here, Plaintiff believes and alleges that a credit instrument, as defined by NRS 463.01467, was in fact generated by the Defendants' employees when Plaintiff went to the cashier and made arrangements for payment. Plaintiff recognizes that he does not possess any documentary proof of that credit instrument, but he believes that the casino records must reflect his winnings and his identity, as he provided three forms of identification and his contact information when making arrangements for payment of his winnings.

Although this was not expressly alleged in the Complaint, Plaintiff's allegations implicitly include this. If necessary, he requests leave to amend the Complaint to explicitly do so.

It is well established in Nevada law that a dispute regarding gaming debts that *are* evidenced by a credit instrument may be resolved through the courts. *See, e.g.*, Zoggolis v. Wynn Las Vegas, LLC, 768 F.3d 919, 924 (9th Cir. 2014) ("Because the Nevada legislature only limited enforcement of gaming debts that are not evidenced by a credit instrument, the obvious implication is that enforcement of gaming debts evidenced by a credit instrument is not so limited.").

Plaintiff believes and alleges that the credit instrument evidencing his winnings was created during the relevant time period, before he left the Aria and Las Vegas to return home, confident that Aria would be sending him a check soon after. He is entitled to conduct discovery on this point, and dismissal based on a lack of documentation would be premature.

**C.  Several of Plaintiff's Causes of Action Fall Outside the Scope of NRS 463.361, Regardless.**

Finally, Plaintiff asks the court to note that several of his causes of action, specifically his first (Negligent Training, Hiring, and Supervision) and fifth (Negligent or Fraudulent Misrepresentation) do not address the validity of the gaming debt itself. These claims relate to conduct by Defendants' employees, and could be brought even if the gaming debt is determined to be invalid.

In Hazelwood v. Harrah's, 109 Nev. 1005, 1012, 862 P.2d 1189, 1193 (1993), the Nevada Supreme Court upheld a jury verdict in favor of a casino patron regarding negligent misrepresentation by a casino employee. In that case, the patron believed what the casino employee told him, and he acted upon that belief. This is substantially the same as what Plaintiff alleges here.

Very recently, in Cipriani v. Resorts World Las Vegas, LLC, No. 24-7106, 2025 LX 400155 (9th Cir. Nov. 3, 2025), the 9th Circuit held that a cause of action for negligent supervision could be maintained against a casino employee, even though that plaintiff's claims related to gaming and the NGCB were removed from this Complaint. See Cipriani v. Resorts World Las Vegas, LLC, No.

2:23-cv-01626-MMD-MDC, 2024 U.S. Dist. LEXIS 193167, at *7 (D. Nev. Oct. 23, 2024).

Therefore, even if the court finds that some of Plaintiff's claims fall under the "exclusive jurisdiction" of the NGCB, others do not. Those should be allowed to proceed.

## V. PLAINTIFF'S CLAIMS ARE SUFFICIENTLY PLEADED

Defendants argue, in the alternative, that Plaintiff's claims should be dismissed because they fail to state a claim. These arguments fail, as a matter of law.

### A. Allegations against MGM Resorts International

Defendants argue that MGM Resorts International should be dismissed as a defendant in this case because it "does not possess a gaming license, does not operate the Aria Resort, and the Complaint contains no allegations related to MGM Resorts International." The first two of these contentions are factual allegations that are inappropriate for a FRCP 12(b)(6) motion to dismiss, and the third is plainly incorrect, as all claims are directed to all of the Defendants. Therefore, this request should be denied, as a matter of law.

With that said, Plaintiff included MGM Resorts International as a defendant out of an abundance of caution, because as an outsider, he is not privy to the contractual and legal connections among these entities. If the remaining corporate defendants, ARIA RESORT & CASINO, LLC, and ARIA RESORT & CASINO HOLDINGS, LLC, affirm that they are the proper entities for these claims – without waiving their other arguments regarding the viability of

the claims, of course – then Plaintiff would have no objection to dismissing MGM Resorts International without prejudice.

### B. Negligent Training, Hiring, and Supervision

Plaintiff's first cause of action was based on an undeniable truth: if his allegations are correct, then there was a serious failure by Defendants' employees. At this point, he does not know what those employees did, specifically. He believes that certain employees acted intentionally, and others – the ones who should have been supervising the first group – failed in their duties. This necessarily means that employees were negligently trained, hired, and/or supervised.

It is difficult for Plaintiff to be more specific in his allegations because he does not know where the breakdown happened. Did a cashier negligently fail to log his information, for example? Or did the failure come later, when it was time to mail the check to Plaintiff? The only way he will be able to add specificity to his allegations is through discovery.

With that said, Plaintiff is, of course, willing to amend his Complaint to add more detail to his allegations if the court believes that is necessary.

### C. Breach of Contract

Plaintiff alleges that Defendants offered to issue a check in exchange for surrendered chips. He accepted and performed. Defendants breached by failing to pay. These facts satisfy the elements of a contract claim under Nevada law. Padilla Constr. Co. v. Big-D Constr. Corp., 132 Nev. 1014, 386 P.3d 982 (2016) (Elements are "(1) formation of a valid contract; (2) performance or excuse of

performance by plaintiff; (3) material breach by the defendant; and (4) damages"). Defendants cannot argue that there was no contract formed under these facts, but instead return to their argument that the contract could only be enforced through the procedures of NRS 463.361 *et seq.* As discussed above, Plaintiff disagrees that these claims, including the breach of contract cause of action, are the type of claims that the statute meant to cover. Therefore, he respectfully requests that the court deny this request for dismissal of his contractual claim.

**D.     Conversion**

Plaintiff alleges he surrendered over $2 million in chips. Defendants retained them, refused to pay, and later denied the transaction occurred. These facts support a claim for wrongful dominion over personal property. Evans v. Dean Witter Reynolds, Inc., 116 Nev. 598, 606 (2000). Other than the same argument about NGCB's exclusive jurisdiction, Defendants offer no argument to the contrary, and therefore it should be denied for the same reasons.

**E.     Unjust Enrichment**

It is undisputed that Defendants received and appreciated a tangible benefit – Plaintiff's surrendered chips – without providing compensation. Retaining this benefit under the circumstances alleged would be unjust. Nevada Industrial Dev. v. Benedetti, 103 Nev. 360, 363 n.2, 741 P.2d 802, 804 n.2 (1987); Unionamerica Mtg. v. McDonald, 97 Nev. 210, 212, 626 P.2d 1272, 1273 (1981). This cause of action is pleaded in the alternative to the breach of contract claim. If the court finds that there was no enforceable contract, then Plaintiff is entitled to recover his damages based on this tort.

## F. Fraudulent Misrepresentation

Finally, Plaintiff alleges that Aria employees knowingly misrepresented that payment would follow. He reasonably relied on this false promise by surrendering the chips. The Complaint pleads the who, what, when, and how with sufficient specificity to satisfy Rule 9(b). Barmettler v. Reno Air, Inc., 114 Nev. 441, 447, 956 P.2d 1382, 1386 (1998). It is unclear what more Defendants would require of Plaintiff in this situation. Because the Complaint contains all the required details to support Plaintiff's cause of action for fraudulent misrepresentation, Defendants' request to dismiss it should also be denied.

## VI. ALTERNATIVE REQUEST FOR LEAVE TO AMEND

Should this court find any portion of the pleading deficient, Plaintiff respectfully requests leave to amend under FRCP 15(a)(2). "[L]eave to amend shall be freely given when justice so requires." Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962) (internal quotation omitted).

## VII. CONCLUSION

This case involves conduct that occurred after the conclusion of gaming activity. Plaintiff has alleged a plausible claim that Defendants accepted property based on a false promise and refused to pay. This is not a gaming debt; it is a civil wrong.

///

///

For these reasons, Plaintiff respectfully requests that the motion to dismiss be denied.

DATED this 21st day of November, 2025.

**Lather Law**

*/s/ Jason Lather*

Jason F. Lather, Esq.
Nevada Bar No. 12607
4484 S. Pecos Rd., Suite 171
Las Vegas, NV 89121

## Certificate of Service

I hereby certify that on the 21st day of November, 2025, I served the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** on all parties to this action, by electronic transmission through the court's electronic filing services.

*/s/ Jason Lather*

Employee of Lather Law