**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

FRANZ WAKEFIELD,

Plaintiff,

vs.

ARIA RESORT & CASINO, LLC, *et al.*,

Defendants.

Case No.: 2:25-cv-01761-GMN-MDC

**ORDER GRANTING MOTION TO DISMISS**

Pending before the Court is the Motion to Dismiss, (ECF No. 13), filed by Defendants Aria Resort & Casino, LLC, Aria Resort & Casino Holdings, LLC, and MGM Resorts International. Plaintiff Franz Wakefield filed a Response, (ECF No. 14), to which Defendants replied, (ECF No. 15).

For the reasons discussed below, the Court GRANTS Defendants' Motion to Dismiss.

## I. BACKGROUND

This case arises from Plaintiff's failure to collect an alleged $2 million in gambling winnings from the Aria Resort & Casino. Plaintiff alleges that, after spending a week gambling at the Aria, he won over $2 million playing roulette and slot machines. (Compl. ¶¶ 12–14, ECF No. 1). At the end of his stay, Plaintiff attempted to cash out his winnings. (*Id.* ¶ 15). He claims he surrendered his chips and provided the cashier with his identification and address. (*Id.* ¶¶ 15–17). The cashier allegedly accepted his chips and told him the casino would send a check with his winnings to his home address. (*Id.* ¶ 16). Plaintiff claims that he never received a check, and Aria denies having any record of his winnings. (*Id.* ¶¶ 16–17). Plaintiff thereafter filed this action, asserting claims for (1) negligent training, hiring, and supervision, (2) breach

of contract, (3) conversion, (4) unjust enrichment, and (5) negligent or fraudulent misrepresentation. (*Id.* ¶¶ 21–52).

## II. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 377 (1994). Therefore, before a federal court may consider the merits of a case, it must first determine whether it has proper subject-matter jurisdiction. *Scott v. Pasadena Unified Sch. Dist*., 306 F.3d 646, 653–54 (9th Cir. 2002). Rule 12(b)(1) of the Federal Rules of Civil Procedure ("FRCP") permits motions to dismiss for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When subject-matter jurisdiction is challenged, the burden of proof is placed on the party asserting that jurisdiction exists. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). Accordingly, the court will presume lack of subject-matter jurisdiction until the plaintiff proves otherwise in response to the motion to dismiss. *Kokkonen*, 511 U.S. at 377.

### B. Motion to Dismiss for Failure to State a Claim

Dismissal is appropriate under FRCP 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, FRCP 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to FRCP 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III. DISCUSSION

Defendants move to dismiss all of Plaintiff's claims, arguing that because they arise from a dispute over gaming winnings, the Nevada Gaming Control Board ("NGCB") properly has jurisdiction. (*See generally* Mot. Dismiss, ECF No. 13). Plaintiff contends that the Court does have subject matter jurisdiction over this case because his claims are exempt from the exclusive jurisdiction of the NGCB. (Resp. 4:6–6:5, ECF No. 14).

### A. Statutory Scheme

Nevada has created a statutory scheme to adjudicate disputes over gaming winnings. *See* Nev. Rev. Stat. ("NRS") 463.361–366. "Nevada courts 'traditionally followed the common law doctrine . . . that a gaming debt is not legally enforceable.'" *Zoggolis v. Wynn Las Vegas, LLC*, 768 F.3d 919, 921 (9th Cir. 2014) (quoting *Sigel v. McEvoy*, 707 P.2d 1145, 1146 (Nev. 1985) (citations omitted)). The Nevada Legislature codified this doctrine in NRS 463.361, which provides that "gaming debts . . . not evidenced by a credit instrument are void and unenforceable and do not give rise to any administrative or civil cause of action." Nev. Rev. Stat. 463.361(1). However, NRS 463.361(2) provides that a "claim by a patron of a licensee

for payment of a gaming debt that is not evidenced by a credit instrument may be resolved . . . by the [NGCB]." Nev. Rev. Stat. 463.361(2)–(2)(a). This provision grants exclusive jurisdiction to the NGCB "to resolve a disputed claim . . . by a patron of a gaming licensee for payment of a gambling debt that is not evidenced by a credit instrument." *Sengel v. IGT*, 2 P.3d 258, 260 (Nev. 2000); *see Zoggolis*, 768 F.3d at 921.

A "credit instrument" is defined as "a record which evidences a gaming debt owed to a person who holds a nonrestricted license at the time the debt is created." Nev. Rev. Stat. 463.01467. A "licensee" is defined as "any person to whom a valid gaming license . . . has been issued." *Sigel*, 707 P.2d at 1146 n.1 (quoting Nev. Rev. Stat. 463.0171). Under Nevada law, "suits to collect unpaid gambling winnings" are categorized as "gaming debts" subject to the exclusive jurisdiction of the NGCB. *Erickson v. Desert Palace, Inc.*, 942 F.2d 694, 696 (9th Cir. 1991) (citing *Harrah's Club v. Nev. State Gaming Control Bd.*, 766 P.2d 900 (Nev. 1988)).

**B. Jurisdiction over Plaintiff's Claims**

Here, all of Plaintiff's claims arise from his allegation of unpaid gambling winnings, and Plaintiff never filed a claim regarding those unpaid winnings with the NGCB. (*See* Compl. ¶¶ 29–44); (*see generally* Resp.). Plaintiff now contends that his claims fall outside the ambit of NRS 463.361 because (1) they arise from "post-gaming" conduct, and (2) his alleged debts are evidenced by a credit instrument. (Resp. 4:6–6:5). Alternatively, Plaintiff contends that even if the NGCB has exclusive jurisdiction over his breach of contract, conversion, and unjust enrichment claims, his claims for negligent hiring, training, and supervision, and negligent or fraudulent representation fall outside the NGCB's jurisdiction. (*Id.* 6:6–7:5). The Court addresses each argument in turn.

First, Plaintiff argues that his claims do not involve a "gaming debt" because the events at issue occurred after the conclusion of gaming conduct. (*Id.* 4:8–18). However, Plaintiff does not provide any authority for this interpretation of NRS 463.361. (*See generally id.*). Nevada

law "characteristically categorizes suits to collect unpaid gambling winnings as gaming debts" subject to the NGCB's exclusive jurisdiction. *Erickson*, 942 F.2d at 696 (citing *Harrah's Club*, 766 P.2d 900). Here, Plaintiff alleges that he won $2 million dollars in gambling winnings which Defendants have since refused to pay. Thus, the Court concludes that Plaintiff's claims involve a "gaming debt" under NRS 463.361.

Second, Plaintiff avers that the NGCB does not have exclusive jurisdiction over his claims because discovery will reveal that the gaming debt allegedly owed by Defendants is evidenced by a credit instrument. (Resp. 5:1–6:5). While Plaintiff concedes that he did not allege the existence of such a credit instrument in his Complaint, he "believes and alleges" that a credit instrument was generated by Defendants' employees. (*Id.* 5:6–7). However, this argument fails for two reasons. First, as Defendants point out, it is undisputed that "an unpaid slot machine jackpot," part of Plaintiff's alleged gaming debt here, "is a gaming debt not evidenced by a credit instrument." *Erickson*, 942 F.2d at 695 (citing *Harrah's Club*, 766 P.2d 900). Second, because a "credit instrument" is defined as "a record which evidences a gaming debt owed to a person who holds a nonrestricted license at the time the debt is created," no "credit instrument" could evidence a debt owed by a casino to a patron. Nev. Rev. Stat. 463.01467. Accordingly, this argument does not place Plaintiff's claims outside the scope of NRS 463.361.

Third, Plaintiff argues that his claims for negligent training, hiring, and supervision and negligent or fraudulent misrepresentation are exempt from the NGCB's exclusive jurisdiction because they "relate to conduct by Defendants' employees, and could be brought even if the gaming debt is determined to be invalid." (Resp. 6:11–12). However, Plaintiff's Complaint reveals that these two claims are closely connected to the alleged gaming debt. In support of his negligent hiring, training, and supervision claim, Plaintiff alleges that Defendants breached their duty of care by hiring and failing to supervise employees to ensure they would not deprive

customers of their gaming wins. (Compl. ¶¶ 24–25). Likewise, in support of his negligent or fraudulent misrepresentation claim, Plaintiff alleges that Defendants falsely represented that they would mail him a check for his winnings which never came. (*Id.* ¶¶ 46–49).

The Ninth Circuit has explained that the reach of NRS 463.361 turns on the remedy sought by the plaintiff. In *Erickson*, the plaintiffs argued that their action was not subject to the exclusive jurisdiction of the NGCB because the casino's refusal to pay a slot machine jackpot amounted to fraud. 942 F.3d at 696. The court disagreed, explaining that under NRS 463.361, "*any* action to recover [a gaming debt] is confined to the administrative process." *Id.* at 696 (emphasis in original); *see Devon v. Unbelievable, Inc.*, No. 94-15078, 1994 WL 283666 (9th Cir. June 24, 1994) (affirming district court's dismissal of negligence claim against casino employee because the "essence of [plaintiff's] claim" was that she was entitled to a gaming debt). While other Courts in this district have found jurisdiction over fraud claims stemming from gambling *losses*, claims for fraudulent withholding of gambling *winnings*, like Plaintiff's here, are subject to the exclusive jurisdiction of the NGCB. *Erickson*, 942 F.2d at 696–697; *see Berman v. Riverside Casino Corp.*, 323 F.2d 977, 979 (9th Cir. 1963) ("[O]ne who lost money in a crooked gambling game could recover it in a civil action."); *Zaika v. Del E. Webb Corp.*, 508 F. Supp. 1005, 1010–11 (D. Nev. 1981) (permitting patron who claimed a casino used an extra card in its blackjack decks to bring a civil suit).

Further, the cases cited by Plaintiff in support of this argument are unpersuasive. In *Hazelwood v. Harrah's*, 862 P.2d 1189 (Nev. 1993), *overruled by Vinci v. Las Vegas Sands, Inc.*, 984 P.2d 750 (1999), the Nevada Supreme Court upheld a jury verdict in favor of a casino patron alleging false imprisonment, defamation, and negligent misrepresentation by casino employees. However, the plaintiff in that case did not seek to recover an unpaid gaming debt, but rather sought compensation for "humiliation, disgrace, [and] emotional distress" caused by his alleged confinement in a casino hotel room and subsequent arrest after being labeled a

fraud. *Hazelwood*, 862 P.2d at 1192. Similarly, in *Cipriani v. Resorts World Las Vegas, LLC*, No. 24-7106, 2025 WL 3066303 (9th Cir. Nov. 3, 2025), the plaintiff's claims did not fall within the exclusive jurisdiction of the NGCB because he did not seek to recover an unpaid gaming debt. Rather, he asserted claims for negligence and negligent supervision, among others, against the defendants for "encouraging or allowing another casino guest" to harass him. *Cipriani*, 2025 WL 3066303 at *1.

Because Plaintiff seeks to recover an unpaid gaming debt not evidenced by a credit instrument, the NGCB has exclusive jurisdiction over all of his claims under NRS 463.361. Accordingly, the Court concludes that it lacks subject matter jurisdiction over this case and GRANTS Defendants' Motion to Dismiss.[1]

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 13), is **GRANTED** with prejudice.

The Clerk of Court is kindly directed to close this case.

**DATED** this 18 day of September, 2026.

Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT

[1] Because the Court lacks subject matter jurisdiction over Plaintiff's claims, it need not analyze them under FRCP 12(b)(6).